# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

T-Mobile USA, Inc. cellular telephone assigned number 608-359-7025, more fully described in Attachment A.

Case No. 16-940M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

T-Mobile USA, Inc. cellular telephone assigned number 608-359-7025, more fully described in Attachment A.

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

Please see Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
21 USC §§ 841 and 846 and Title 18, USC §§ 1956 and 1957

The application is based on these facts: See attached affidavit.

☒ Delayed notice of __180__ days (give exact ending date if more than 30 days: __May 13, 2017__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Matthew Cooper, DEA Special Agent
*Printed Name and Title*

Sworn to before me and signed in my presence:
Date: __November 14, 2016__

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin           Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR SEARCH WARRANTS

I, Matthew Cooper, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned cell numbers:

   a. **(414) 308-6109**, ("**Target Cell Phone C**"), whose cell phone provider is Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, New Jersey. **Target Cell Phone C** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

   b. **(408) 903-0591**, ("**Target Cell Phone D**"), whose cell phone provider is T-Mobile, a wireless telephone service provider headquartered in Bellevue, Washington. **Target Cell Phone D** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

   c. **(608) 359-7025**, ("**Target Cell Phone E**"), whose service provider is T-Mobile, a wireless telephone service provider headquartered in Bellevue, Washington. **Target Cell Phone E** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2. I am employed as a Detective with the Milwaukee Police Department and have been a law enforcement officer for over 19 years. I have been a Detective for over 13 years and have been assigned to the Narcotics Division for over 12 years. I was previously assigned to the Vice Control Division (Narcotics) as a Police Officer for over 2 years. I have been assigned to

1

the High Intensity Drug Trafficking Area (HIDTA) for over 8 years. I am also a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been since October, 2008. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

   a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

   b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

   c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

   d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

2

e.  I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.  I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.  I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.  I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.  I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4. I am currently participating in an investigation of two heroin, cocaine, methamphetamine, and marijuana trafficking organizations led by Pablo HIDALGO-SANCHEZ and Luis GOMEZ hereinafter referred to as the HIDALGO-SANCHEZ DTO and the GOMEZ DTO. Juan AVINA has been identified as a high-ranking member of the HIDALGO-SANCHEZ DTO. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (c) information obtained from cooperating citizen

3

witnesses, confidential sources, and defendants, whose reliability is established herein.[1] This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957, have been committed, are being committed, and will be committed by Juan AVINA, Pablo HIDALGO-SANCHEZ, Luis GOMEZ, and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## **PROBABLE CAUSE**

6. In August, 2016, case agents interviewed a confidential source, hereinafter referred to as CS-1[2]. CS-1 was interviewed in August 2016, regarding the HIDALGO-SANCHEZ and GOMEZ DTOs. CS-1 has known Luis GOMEZ for about ten years and knows him as "Paco." CS-1 knows GOMEZ has been involved in selling narcotics for at least ten

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

[2] Case agents believe CS-1 is a credible and reliable person. CS-1 has been providing reliable information to law enforcement since 2012. CS-1 has conducted multiple controlled purchases of narcotics from individuals. CS-1 has conducted consensually-recorded conversations with drug dealers, both in person and on the telephone. CS-1's information has never been found to be false or misleading. CS-1 has made statements to case agents that are against his/her penal interests, in that CS-1 has admitted his/her involvement in the DTO's activities in the past. The information provided by CS-1 is consistent with evidence obtained elsewhere in this investigation and/or substantial portions of CS-1's information has been corroborated through independent investigation, including surveillance, information from other confidential sources, controlled buys, and consensually-recorded conversations and phone calls. CS-1 is cooperating with case agents for consideration in a pending immigration matter.

4

years. CS-1 has known Pablo HIDALGO-SANCHEZ for about six years and knows him as "Pee Wee." CS-1 knows HIDALGO-SANCHEZ has been involved in selling narcotics for as long as CS-1 has known him. CS-1 knows GOMEZ and HIDALGO-SANCHEZ sell kilogram quantities of heroin, cocaine, methamphetamine, and marijuana.

7. CS-1 stated GOMEZ and HIDALGO-SANCHEZ receive kilograms of cocaine and heroin in concealed compartments within vehicles. CS-1 stated that when the drugs are removed, bulk US currency is placed in the compartment. The vehicle is then placed on a car carrier tractor trailer and returned to its destination. CS-1 stated GOMEZ receives 2-3 vehicle shipments per week. It should be noted that in January 2016, case agents conducted surveillance of GOMEZ and observed him deliver a vehicle to a car carrier tractor trailer. The vehicle was placed on the trailer. The tractor trailer was stopped and the driver stated the vehicle was destined for California. The vehicle was not searched.

8. CS-1 positively identified a photo of Juan AVINA. CS-1 stated AVINA is one of HIDALGO-SANCHEZ's workers who travels to Stockton, CA and brings back multiple kilograms of heroin, methamphetamine, and cocaine under HIDALGO-SANCHEZ's direction. CS-1 stated that in August 2016, HIDALGO-SANCHEZ had a trailer with 500 pounds of marijuana delivered from California to a truck stop in Chicago, Illinois. CS-1 stated AVINA drove to the truck stop and picked up the trailer. AVINA was then instructed by HIDALGO-SANCHEZ to deliver the marijuana to HIDALGO-SANCHEZ's uncle, Efrain SANCHEZ, in Milwaukee, Wisconsin. CS-1 stated SANCHEZ then weighed the marijuana to confirm it was all there.

9. CS-1 identified Jonathan MARTINEZ-ACOSTA as a member of the GOMEZ DTO. CS-1 stated MARTINEZ-ACOSTA was left in charge of the daily operations of the DTO

5

while GOMEZ was in Mexico during the summer and early fall of 2016. MARTINEZ-ACOSTA is in charge of receiving and distributing the kilograms of narcotics, collecting the drug proceeds, and sending them to specific locations. CS-1 stated GOMEZ also pays MARTINEZ-ACOSTA's rent as partial payment for his work. On September 29, 2016, MARTINEZ-ACOSTA delivered $110,080 in drug proceeds to an undercover officer. On November 7, 2016, CS-1 conducted a controlled buy of two ounces of cocaine from MARTINEZ-ACOSTA.

10. CS-1 identified Juan AVINA's old phone number as (414) 629-2083 (Target Cell Phone A). On or about September 25, 2016, CS-1 informed case agents that DTO leaders were in the Stockton, California area arranging for a quantity of methamphetamine to be delivered to Milwaukee. Telephone records for (414) 629-2083 (Target Cell Phone A) revealed that Target Cell Phone A was in frequent contact with numerous cellular telephone numbers assigned area code 209. Case agents are aware that 209 is the area code for Stockton, California. Telephone records also reveal that Target Cell Phone A was in frequent contact with (857) 880-0758. Multiple DEA investigations have revealed that (857) 880-0758 was being used by a subject involved in money laundering throughout the United States. Court-authorized positional information for (857) 880-0758 revealed the phone was in Stockton, California at the time the phone was in contact with Target Cell Phone A. Based on the investigation to date, case agents believe AVINA was in contact with this number regarding the shipment of methamphetamine that was to be delivered to Milwaukee or regarding the laundering of drug proceeds.

11. On October 18, 2016, at about 2:00 p.m., court-authorized positional information for (414) 629-208 (Target Cell Phone A) showed that AVINA entered Interstate 94 east in the Milwaukee area and drove four hours to Michigan. Less than two hours later, AVINA and the

6

phone travelled four hours back to Milwaukee and went to the residence of AVINA. Case agents later learned from CS-1 that AVINA had travelled to Michigan to deliver about 9 ½ pounds of methamphetamine to a distributor at that location. Telephone records revealed that during that trip to Michigan, AVINA was in frequent contact with **(408) 903-0591 (Target Cell Phone D)**, the number used by Pablo HIDALGO-SANCHEZ, using both voice calls and text messages.

12. According to CS-1, on October 21, 2016, AVINA travelled to Stockton, California to facilitate the purchase and transportation of additional quantities of methamphetamine and other drugs. On October 21, 2016, at approximately 2:22 a.m., AVINA stopped using (414) 629-2083. CS-1 identified **(414) 308-6109 (Target Cell Phone C)** as another phone being used by AVINA to conduct drug trafficking activities. Telephone records for **(414) 308-6109 (Target Cell Phone C)** reveal that this number is in frequent contact with members of the HIDALGO-SANCHEZ DTO.

13. Case agents believe AVINA utilizes **(414) 308-6109 (Target Cell Phone C)** to conduct drug-related conversations with members of the HIDALGO-SANCHEZ DTO as well as other drug traffickers in furtherance of the DTOs activities. For example, telephone records reveal that from October 21, 2016 thru November 9, 2016, **(414) 308-6109 (Target Cell Phone C)** had approximately 32 contacts with **(408) 903-0591**, the phone used by Pablo HIDALGO-SANCHEZ. Similarly, from August 4, 2016 thru October 27, 2016, **(414) 308-6109 (Target Cell Phone C)** was in contact with (414) 292-5312 a total of 92 times. This phone is known to be used by Efrain SANCHEZ, the uncle of Pablo HIDALGO-SANCHEZ. CS-1 identified SANCHEZ as a drug and money courier for the HIDALGO-SANCHEZ DTO who also stores narcotics for the DTO. Additionally, from August 4, 2016 thru November 7, 2016, **(414) 308-6109 (Target Cell Phone C)** was in contact with (209) 688-4235 a total of 521 times. This

7

phone is used by Armando ESQUIVEL, a cousin of Pablo HIDALGO-SANCHEZ who is also involved in drug trafficking with members of the DTO.

14. Case agents identified **(408) 903-0591 (Target Cell Phone D)** as the current phone being used by Pablo HIDALGO-SANCHEZ. Telephone records reveal that **Target Cell Phone D** is in frequent contact with other phones used by members of the HIDALGO-SANCHEZ and GOMEZ DTOs. As detailed above, HIDALGO-SANCHEZ is in frequent contact with Juan AVINA. HIDALGO-SANCHEZ, using **(408) 903-0591 (Target Cell Phone D)** is also in frequent contact with Armando ESQUIVEL. From October 13, 2016 thru November 7, 2016, HIDALGO-SANCHEZ contacted ESQUIVEL 133 times. From October 17, 2016, thru November 7, 2016, HIDALGO-SANCHEZ, using **(408) 903-0591 (Target Cell Phone D)**, contacted Luis GOMEZ, using **(608) 359-7025 (Target Cell Phone E)** 42 times.

15. On October 23, 2016, Luis GOMEZ purchased a one-way ticket on American Airlines from Milwaukee to San Francisco. During the ticket purchase, GOMEZ identified his phone number as **(608) 359-7025 (Target Cell Phone E)**. A review of telephone records revealed that **(608) 359-7025 (Target Cell Phone E)** is in contact with numerous other phones used by DTO members. As detailed above, GOMEZ, using **(608) 359-7025 (Target Cell Phone E)** is in frequent contact with HIDALGO-SANCHEZ. Additionally, from September 29, 2016, thru November 7, 2016, GOMEZ, using **(608) 359-7025 (Target Cell Phone E)** was in contact with Jonathan MARTINEZ-ACOSTA, using (414) 334-3513, 139 times. From October 4, 2016, thru October 22, 2016, GOMEZ, using **(608) 359-7025 (Target Cell Phone E)**, was in contact with Maria DOMINGUEZ, using (414) 388-7257, 18 times. According to CS-1, DOMINGUEZ stores narcotics at her residence for the GOMEZ DTO and collects drug proceeds from DTO customers. Finally, GOMEZ, using **(608) 359-7025 (Target Cell Phone E)**, has also been in

8

contact with (754) 802-1825 and (561) 200-3777. Both of these numbers are used by auto transport companies who use semi tractor trailers to transport vehicles around the United States. As detailed above, CS-1 indicated the HIDALGO-SANCHEZ and GOMEZ DTOs use vehicle transport services to transport drugs and drug proceeds around the United States.

16. Based upon my training, experience, and familiarity with the investigation, I believe that Juan AVINA, Pablo HIDALGO-SANCHEZ, and Luis GOMEZ are using the **Target Cell Phones** to communicate with others to further their drug trafficking and money laundering activities. Case agents believe the location information requested will assist in identifying their source(s) of supply, stash locations, and other co-conspirators involved in the drug trafficking and money laundering organizations.

17. In my training and experience, I have learned that Verizon Wireless and T-Mobile are companies that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless

9

device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18. Based on my training and experience, I know that Verizon Wireless and T-Mobile can collect E-911 Phase II data about the location of the **Target Cell Phones**, including by initiating a signal to determine the location of the **Target Cell Phones** on Verizon Wireless or T-Mobile's networks or with such other reference points as may be reasonably available.

19. Based on my training and experience, I know that Verizon Wireless and T-Mobile can collect cell-site data about the **Target Cell Phones**.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 180 days after the collection authorized by the warrants has been completed. There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phones** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrants, the proposed search warrants do not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrants authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information,

10

there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct Verizon Wireless and T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless and T-Mobile. I also request that the Court direct Verizon Wireless and T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless or T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phones** on Verizon Wireless or T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless and T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrants at any time of day or night, owing to the potential need to locate the **Target Cell Phones** outside of daytime hours.

11

## ATTACHMENT A

Property to Be Searched

1. The cellular telephones assigned cell numbers **(408) 903-0591, (Target Cell Phone D)** and **(608) 359-7025 (Target Cell Phone E)**, whose service provider is T-Mobile, a wireless telephone service provider headquartered in Bellevue, Washington.

2. Information about the location of the **Target Cell Phones** that is within the possession, custody, or control of T-Mobile.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **Target Cell Phones** described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of the **Target Cell Phones**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phones** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).